**THIRD DIVISION**
**DOYLE, P. J.,**
**REESE and BROWN, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**August 12, 2021**

# In the Court of Appeals of Georgia

A21A0773. CANTRELL v. THE STATE.

BROWN, Judge.

Following a jury trial, Billy Joe Cantrell was convicted of three counts of child molestation and one count of sexual battery against a child under the age of sixteen for acts committed against his girlfriend's daughter, beginning when she was nine years old. Cantrell appeals from his convictions and the denial of his amended motion for new trial, contending that the evidence was insufficient to support his convictions, and that the trial court erred in (1) prohibiting trial counsel from asking the State's expert a hypothetical question; (2) including indeterminable banishment as part of his sentence; and (3) failing to merge the sexual battery count into one of the child molestation counts. We affirm.

"Following a criminal conviction, the defendant is no longer presumed innocent, and we view the evidence in the light most favorable to sustain the verdict." (Citation and punctuation omitted.) *Robinson v. State*, 342 Ga. App. 624, 625 (805 SE2d 103) (2017). So viewed, the evidence showed that when the victim was nine years old, Cantrell came into her bedroom, unzipped her pants, touched her between her legs, and masturbated in front of her. The victim kept pushing Cantrell's hand away, told him she would tell if he did not go away, and threatened him with scissors. Several years later, and on at least one occasion, Cantrell put the victim on his back and touched her thighs "in between [her] legs . . . [o]n the inside . . . [u]p toward the top." The victim waited several years to disclose the molestations because she was terrified and embarrassed, and Cantrell made her mom happy. She also testified that Cantrell told her not to say anything because "he would end up in prison for 20 years like [the victim's] grandfather."[1] At trial, Cantrell testified in his own defense, and denied ever touching the victim inappropriately. According to Cantrell, the victim jumped on his back all the time and thought it was funny, and he told her "to quit."

_____

[1] The victim was interviewed twice by a forensic interviewer from the Appalachian Children's Center, a child advocacy center. Both interviews were played for the jury.

2

1. Cantrell contends the evidence was insufficient to support his convictions based on inconsistencies in the victim's story and testimony. For example, the victim claimed the first incident occurred when she nine and living in Morganton, a town she did not live in until she was ten, and she also told the forensic interviewer that it was dark during the first incident and she could not see, but testified at trial that the door was open and she could see.

> It is well settled that it is the function of the jury, not this Court, to judge the credibility of witnesses, resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from the evidence. In so doing, a jury is authorized to believe or disbelieve all or any part of the testimony of the witnesses. Ultimately, as long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld.

(Citation and punctuation omitted.) *Whorton v. State*, 318 Ga. App. 885, 888 (1) (b) (735 SE2d 7) (2012). Here, the victim's testimony alone was legally sufficient to support Cantrell's convictions. See id. at 889 (1) (b); *Stillwell v. State*, 294 Ga. App. 805, 806 (1) (670 SE2d 452) (2008). See also OCGA § 24-14-8. Moreover, "[c]onflicts between the victim's testimony at trial and the victim's out-of-court statements were for the jury to resolve," *Newton v. State*, 296 Ga. App. 332, 335 (1) (a) (674 SE2d 379) (2009), and the jury, alone, was authorized to judge the credibility

3

of the victim's testimony. *Whorton*, 318 Ga. App. at 889 (1) (b). See also *Stillwell*, 294 Ga. App. at 806 (1); *Little v. State*, 262 Ga. App. 377, 378 (a) (585 SE2d 677) (2003) (differences between victim's earlier statement to police and his trial testimony "simply present[ed] a credibility determination for the trier of fact"). Accordingly, this argument lacks merit.

Cantrell also argues that the evidence was insufficient to support his convictions under Counts 22 and 26 of the indictment because there was no evidence of his intent to arouse or satisfy his sexual desire by his acts described in those counts, "both [of which] occurred during piggyback rides." Count 22 charged Cantrell with molesting the victim when she was nine years old "with the intent to arouse and satisfy the sexual desires of the accused by placing his hand into contact with [the victim's] clothing and unbuttoning her pants." Count 26 charged Cantrell with molesting the victim when she was somewhere between 12 and 14 years old, "by placing his hand into contact with and rubbing [the victim's] upper thigh area of her leg" with the intent to arouse and satisfy his sexual desires.

Contrary to Cantrell's contention, Count 22 has nothing to do with an alleged piggyback ride; Count 22 concerns the masturbation incident.[2] But, to the extent Cantrell contends the evidence was insufficient on the ground that there was no evidence of his intent to arouse or satisfy his sexual desire by the acts alleged in Count 22, we find no merit. "A person commits the offense of child molestation when such person . . . [d]oes any immoral or indecent act to or in the presence of or with any child under the age of 16 years with the intent to arouse or satisfy the sexual desires of either the child or the person[.]" OCGA § 16-6-4 (a) (1). The defendant's intent at the time in question is "peculiarly a question for determination by the jury." (Citation and punctuation omitted.) *Jordan v. State*, 317 Ga. App. 160, 164 (1) (b) (730 SE2d 723) (2012). Evidence that Cantrell unbuttoned the victim's pants while masturbating in front of her was sufficient for the jury to infer that Cantrell intended to arouse and satisfy his sexual desires. See *Bynum v. State*, 300 Ga. App. 163, 165 (1) (684 SE2d 330) (2009) (defendant's acts of placing his penis on his 15-year-old

---

[2] It appears Cantrell is referring to Count 28 (sexual battery against a child under the age of sixteen years), but that crime does not require proof of the intent to arouse or satisfy the defendant's sexual desire. See OCGA § 16-6-22.1 (b) ("[a] person commits the offense of sexual battery when he or she intentionally makes physical contact with the intimate parts of the body of another person without the consent of that person"), (d).

5

daughter's rear end, rubbing her bare bottom, rubbing her bare breasts, and masturbating in her presence sufficient to infer that he acted with the intent to arouse or satisfy his sexual desires), disapproved on other grounds, *Martin v. McLaughlin*, 298 Ga. 44, 46, n.3 (779 SE2d 294) (2015).

As to Count 26, Cantrell argues that because the act occurred while he was giving the victim a piggyback ride, it proves only inadvertent contact during play and no intent to arose or satisfy his sexual desires. The victim's testimony that Cantrell instigated all of the piggyback rides except for one and then touched the victim between her legs, "toward the top," however, was sufficient evidence for the jury to infer that Cantrell acted with the intent to arouse or satisfy his sexual desires. See *Gonzalez v. State*, ___ Ga. App. ___ (1) (a) (857 SE2d 88) (2021) (jury authorized to infer that defendant's act of touching victim on the buttocks was performed with the intent to arouse his sexual desires). See also *Wormley v. State*, 255 Ga. App. 347, 348 (565 SE2d 530) (2002) (touching girls' thighs, backs, and knees constituted child molestation). The evidence was sufficient to support Cantrell's convictions.

2. Cantrell contends that the trial court erred in restricting his cross-examination of the forensic interviewer. Cantrell sought to ask the forensic interviewer a hypothetical question about whether the victim invented the allegations

6

against him in order to avoid being returned to her mother's care. The trial court sustained the State's objection to this question, ruling that defense counsel was asking the witness to speculate and that he could argue his theory to the jury. We find no error, but for a reason different than that relied upon by the trial court.

"The permissible scope of cross-examination is committed to the sound discretion of the trial court, and we review a limitation of the scope of cross-examination only for abuse of discretion." *Nicely v. State*, 291 Ga. 788, 796 (4) (733 SE2d 715) (2012). "Georgia law forbids expert opinion testimony that implicitly goes to the ultimate issue to be decided by the jury, when such issue is not beyond the ken of the average juror." (Citation and punctuation omitted.) *Harris v. State*, 283 Ga. App. 374, 379 (3) (641 SE2d 619) (2007). Indeed, "[a]n expert may not testify as to his opinion as to the existence [or not] of a fact unless the inference to be drawn from facts in evidence is beyond the ken of the jurors—that is, unless the jurors, for want of specialized knowledge, skill, or experience, are incapable of drawing—from facts in evidence—such an inference for themselves." (Citation and punctuation omitted.) *Duncan v. State*, 232 Ga. App. 157, 161 (3) (500 SE2d 603) (1998). See also OCGA § 24-7-704; *Robinson v. State*, 309 Ga. 729, 734 (3) (848 SE2d 441) (2020). Compare *DiPietro v. State*, 356 Ga. App. 539, 545 (2) (a) (848 SE2d 153) (2020). "Where (a)

7

the path from evidence to conclusion is not shrouded in the mystery of professional skill or knowledge, and (b) the conclusion determines the ultimate issues of fact in a case, the jury must make the journey from evidence to conclusion without the aid of expert testimony." (Citation and punctuation omitted.) *Harris*, 283 Ga. App. at 379 (3). See also *Lopez v. State*, 326 Ga. App. 770, 775-776 (4) (757 SE2d 436) (2014).

In *Duncan*, this Court affirmed the trial court's refusal to allow the defendant to elicit from his expert witness an opinion as to whether or not the victims' allegations were the result of projection or pay back, finding that expert opinion testimony was not required to assist the jury in determining whether or not the victims in the case were truthful in their reports of abuse. 232 Ga. App. at 161 (3). We noted, however, that the defendant was not precluded from questioning his expert witness regarding the principles of: (a) whether children make false allegations about sexual abuse and (b) the possible reasons for this behavior. Id. at 160 (3).

In *Harris*, the defendant alleged that the trial court erred in admitting testimony from a clinical psychologist opining that it is a common misconception that people will make up rape allegations for purposes of revenge. 283 Ga. App. at 378-379 (3). While this Court ultimately found admission of the testimony harmless, we concluded that it should not have been allowed because it "implicitly went to the ultimate issue

8

to be decided by the jury, namely, whether the victim had fabricated the rape allegation against [the defendant]." Id. at 379 (3).

In this case, defense counsel began his cross-examination on this issue by asking the forensic interviewer to discuss "what is an alternative hypothesis." When counsel asked "[i]n this particular case, could a possible alternative explanation be that [the victim] would say this happened because she wants to make sure she doesn't go back home to mom or be around [Cantrell]," the State objected. As in *Duncan* and *Harris*, this question implicitly went to the ultimate issue to be decided by the jury, namely, whether the victim had fabricated the molestation allegations against Cantrell because she did not want to return to an unstable and volatile home life. See also *Jennette v. State*, 197 Ga. App. 580, 581-583 (3) (398 SE2d 734) (1990) (expert testimony defendant sought to introduce on the "lying child syndrome" went to credibility and believability of the victims and was, therefore, properly ruled inadmissible). We note that the jury heard ample testimony from the victim and her aunt, as well as an investigator with the district attorney's office, about the victim's unstable and volatile home life, and could determine — without expert opinion — whether the victim had fabricated the events. Accordingly, the trial court did not

9

abuse its discretion in limiting defense counsel's cross-examination of the forensic interviewer.

3. Cantrell contends that the trial court erred in including an "indeterminable banishment" as part of his sentence. As part of the special conditions of probation, the trial court banished Cantrell from Fannin County, where the victim resides, but also imposed the following special condition: "The Defendant may not be present in any County contiguous to where the victim currently resides." A separate section of Cantrell's sentence/final disposition sheet further provided as follows:

> DEFENDANT WILL COMPLY WITH ALL GENERAL CONDITIONS OF PROBATION, SPECIAL CONDITIONS OF PROBATION, SPECIAL SEX OFFENDER CONDITIONS AS ATTACHED, AND SPECIAL CONDITIONS AS FOLLOWS: DEFENDANT WILL HAVE NO CONTACT WITH THE VICTIM . . ., DEFENDANT WILL BE BANISHED FROM FANNIN COUNTY, ANY COUNTY CONTIGUOUS TO THE VICTIM'S CURRENT RESIDENCE, AND ALL FUTURE RESIDENCE PROVIDED BY THE VICTIM TO THE DEPARTMENT OF COMMUNITY SUPERVISION WHILE THE DEFENDANT IS ON PROBATION[.]

Cantrell contends this condition is not "rationally related to the purpose of the sentencing objective" because it is a "moving target" susceptible to accidental violation.

"A trial court has broad discretion in fashioning reasonable probation conditions, including banishment of a defendant from certain counties within the State." *Adams v. State*, 298 Ga. App. 518, 518-519 (2) (680 SE2d 429) (2009). However, "banishment conditions are not unlimited: such conditions must not be unreasonable or otherwise fail to bear a logical relationship to the rehabilitative scheme of the sentence pronounced[.]" (Citation and punctuation omitted.) *Shook v. State*, 300 Ga. App. 59, 60-61 (3) (684 SE2d 129) (2009). The defendant bears the burden of demonstrating that his banishment condition is unreasonable. See id. at 61 (3). In this case, Cantrell has failed to meet his burden.

As this Court has held, "[a] condition of probation which precludes contact between the perpetrator of a sexual crime and his victim bears a reasonable relation to future criminality especially where a family relationship provided the opportunity for the past criminal conduct." *Tuttle v. State*, 215 Ga. App. 396, 397 (2) (450 SE2d 863) (1994). Moreover, a rehabilitative scheme that is designed to promote the victim's protection is not unreasonable. See *Terry v. Hamrick*, 284 Ga. 24, 27 (3) (663 SE2d 256) (2008). In *Terry*, the defendant challenged as unreasonable the probation condition that banished him from every county in the State except Toombs County. Id. at 25 (2). The Supreme Court of Georgia rejected the challenge, finding

11

that curtailing the defendant's movements and allowing the victim to move freely about most of the State without fear of the defendant was an appropriate condition, and was neither unreasonable nor "otherwise fail[ed] to bear a logical relationship to the rehabilitative scheme of the sentence pronounced." (Citation and punctuation omitted.) Id. at 27-28 (3). The condition at issue here is fundamentally similar to and less restrictive than the one at issue in *Terry*, and not an unreasonable one under the circumstances. Accordingly, the trial court did not err in including the condition as part of Cantrell's sentence. See also *Mallory v. State*, 335 Ga. App. 852, 854 (783 SE2d 370) (2016) (defendant failed to meet burden of proving that condition of probation banishing him from two counties was unreasonable). Compare *Chaney v. State*, 355 Ga. App. 737, 741 (c) (845 SE2d 704) (2020) (vacating trial court's overly broad special condition of probation prohibiting defendant from having contact with any child under the age of 18 years).

4. Cantrell contends that the trial court erred in failing to merge Counts 26 and 28. We disagree.[3]

---

[3] The State concedes in its brief that the two counts merge, but, as explained infra, both Cantrell and the State are incorrect.

12

Count 26 of the indictment charged Cantrell with child molestation "by placing his hand into contact with and rubbing [the victim's] upper thigh area of her leg" with the intent to arouse and satisfy his sexual desires, which act occurred sometime "between the 1st day of October, 2013, and the 31st day of March, 2015." Count 28 of the indictment charged Cantrell with the offense of sexual battery against a child under the age of sixteen "when he intentionally made physical contact with the 'intimate parts' of the body of [the victim] . . . said physical contact being without the consent of said child, by placing his hand into contact with and rubbing [the victim's] inner thigh" sometime "between the 1st day of October, 2013, and the 31st day of March, 2015." We rejected the same argument in *Hogg v. State*, 356 Ga. App. 11 (846 SE2d 183) (2020), concluding that the offense of (aggravated) sexual battery required proof of a fact that the offense of child molestation did not: lack of consent. And, the offense of child molestation required proof of a fact the offense of (aggravated) sexual battery did not: the intent to arouse or satisfy the sexual desires of either the child or the defendant. Id. at 15 (2) (a). That conclusion controls here. Accordingly,

the trial court did not err in failing to merge Counts 26 and 28 for purposes of sentencing.[4]

*Judgment affirmed. Doyle, P. J., and Reese, J., concur.*

---

[4] Cantrell contends that *Hudson v. State*, 309 Ga. App. 580 (711 SE2d 95) (2011) controls here. In that case, we held that the defendant's conviction for aggravated sexual battery should have merged with his conviction for child molestation for purposes of sentencing. Id. at 582 (2). But, *Hudson*, and *Dickerson v. State*, 304 Ga. App. 762, 766-767 (3) (697 SE2d 874) (2010) and *Gunn v. State*, 300 Ga. App. 229, 230-231 (2) (684 SE2d 380) (2009), upon which *Hudson* relied, were all decided before *Watson v. State*, 297 Ga. 718 (777 SE2d 677) (2015), wherein the Supreme Court construed the sexual battery statute "to require actual proof of the victim's lack of consent, regardless of the victim's age," overruling prior cases which held to the contrary. Id. at 720 (2). It also appears that *Dickerson* and *Gunn* both used an inappropriate pre-*Drinkard* analysis.